LAND, J.
In the above-entitled proceeding the administrator of the succession of Randazzo sued out executory process on an act of mortgage and note for $2,165, of date July 18, 1903, purporting to have been signed by the defendant, Joseph Ferrantelli, and the said defendant enjoined the seizure and sale of the mortgaged premises on the ground that the signatures purporting to be his signatures to said act of mortgage and note were forgeries. The administrator for answer averred that the said signatures were genuine, and prayed for a dismissal of the injunction proceedings.
There was judgment dismissing the injunction suit as prayed for, and Joseph Ferrantelli has appealed.
Ferrantelli in June, 1902, purchased certain real estate from the Hibernia Insurance Company for the price of $10,000, payable $3,449 in cash, and the 'balance of $5,501 payable on terms of credit, represented by three notes, each for the sum of $2,167, with 6 per cent, interest from date. When the first note fell due in June, .1903, Ferrantelli was unable to meet it, and at the instance of his brother-in-law went to the office of Robert J. Maloney, notary public, to consult him. Ferrantelli was not acquainted with Maloney, and had no reason to expect any pecuniary favors from him.
But, according to Ferrantelli’s version of the transaction that took place, Maloney gave him a check sufficient to pay' the first note falling due in 1903 with interest to maturity, and paid the second note, without requiring any security whatever. According to the same version, Ferrantelli paid the third note falling due in July, 1905, and at that time owed Maloney a balance of $1,250, which he offered to secure, but Maloney refused to take security, claiming that he did not need any security, because he had the titles to the property and the insurance policies. According to a statement rendered by Maloney to Ferrantelli in August, 1905, the latter owed the former a balance of $4,665.58, and in July, 1905, owed a balance of over $5,000 instead of $1,250 as testified by Ferrantelli. It appears that on July 18, 1903, there was executed before Maloney as notary, an act of mortgage for $2,165 in favor of James M. Connor, purporting to be signed by Joseph' Ferrantelli, for a loan of money, to secure his note for said amount payable to his own order and by him indorsed in 'blank. The act of mortgage was duly recorded on July 20, 1903. This note was sold by Maloney on or about the date of its issue to Gaetano Randazzo, and interest was paid from year to year by Maloney to Randazzo as the holder, as shown by the indorsements on said no.te. Randazzo died, and his administrators sued out executory process to enforce the payment of the note by the seizure and sale of the mortgaged premises.
James M. Connor and the witnesses testified that they recognized their signatures to the act of mortgage, but did not see Ferrantelli sign the act, nor did they know his signature. It was nothing unusual for Maloney in the execution of notarial acts to have the parties and witnesses sign out of the presence of each other. Maloney, as notary, signed the act of mortgage,- and paraphed the note. The act on its face was in authentic form and imported a con *555 fession of judgment. C. P. art. 733. The creditor, being in possession of such an act and the note identified therewith by the paraph of the notary, had the prima facie right to have the property seized and sold by ex-ecutory process. O. P. art. 734. In such a case, article 739, O. P., provides as follows:
“The debtor can only arrest the sale of the thing thus seized, by alleging some of the following reasons, to wit: * * *
“(5) That the act containing the privilege or mortgage is forged.”
Article 741, O. P., reads:
“The plaintiff against whom the injunction has been obtained, may compel the defendant to prove, in a summary manner, before the judge, the truth of the facts alleged in his opposition.”
Under the plain terms of the law cited supra, the burden is on the defendant in execution and plaintiff in injunction to prove the alleged forgery of the act of mortgage. Where the suit is on an act under private signature, and the defendant denies his signature, the burden is on the plaintiff to prove the genuineness of the signature. C. P. art. 325. The law thus draws a clear distinction as to the burden of proof between executory process on an authentic act importing a confession of judgment and an ordinary suit on an act under private signature. In James v. Rand, 43 La. Ann. 179, 182, 8 South. 623, 624, the court held that in an ordinary suit to recover judgment on notes secured by an authentic act of mortgage, where the defense was forgery, the burden was on the plaintiff to prove the genuineness of the signatures. But in the same case the court said:
“Had the plaintiff initiated proceedings by obtaining an order of seizure and sale on her authentic act of mortgage, the defendant would have been necessitated to enjoin on the ground ‘that the act containing the mortgage was forged,’ and in support of her declaration prove that the signature was a forgery. O. P. art. 739.”
As forgery is the only alleged ground of injunction, the only question in the case is whether the plaintiff in injunction has discharged the burden of proving that his signatures are forgeries. Our learned Brother below, in a well-considered opinion, after a review of the evidence, reached the conclusion that the plaintiff in injunction had not discharged this burden of proof.
Where a party denies his signature, the same may 'be proven by witnesses, including experts, or by comparison of handwriting. O. P. art. 325; C. C. art. 2245.
Plaintiff in injunction denied that he had signed the act of mortgage and the note in question, but the judge below held that his testimony was insufficient for the following reasons:
“Defendant said that he could recognize his signature only when it was attached to a document which he could remember having signed. Now, defendant’s memory is unreliable, as shown by his failure to remember the exceptional fact that he had signed his name in the district attorney’s office on an occasion of vital importance. A man who could forget his signature at such a time, less than three years ago, might well forget that he signed a note and act of mortgage in Maloney’s office in 1903.
“The unreliability of defendant’s memory also appears in the matter of the first loan made to him by Maloney which did include one year’s interest as he first stated, though he maintained after refreshing his memory that it did not.
“His recollection is also at fault wnen he says that in July, 1905, he offered Maloney, who refused, security for the balance of $1,250 he then owed him. The balance then due was $4,665.58.
“It is quite improbable that Maloney would have loaned over !¡>2,000 to an utter stranger on the simple security of a note stamped ‘Paid,’ which could not be negotiated, particularly when he could for the asking have secured himself by a mortgage on defendant’s property.
“The coincidence of the loan July 18, 1903, with the date of the mortgage act, argues strongly in favor of the latter’s genuineness.
“Again, why should Maloney have asked defendant for his title and insurance policies (for he must have gotten them from defendant), if not for the purpose of securing himself by a mortgage and transfer of the policy?
“Finally why should Maloney have forged a signature which defendant would have readily given him, if requested to do so?”
The paying teller of a bank in which the defendant had a deposit account testified that the signature to the act of mortgage *557 looked like the signature of the defendant, 'but, after comparing the same with the defendant’s signature on a card held by the bank, concluded that the signature to the act of mortgage was not genuine. This witness based his opinion on the difference between some of the letters in the two signatures.
On the other hand, Mr. O’Sullivan, a recognized expert, testified positively that the disputed signatures were genuine. His conclusion was reached after a careful and searching comparison of the disputed signatures with a number of admitted signatures of the defendant. Mr. O’Sullivan found no indications of forgery, such as tracing, copying, etc., in the signatures in dispute, but did find in them all the essential characteristics of defendant’s ordinary signatures. This conclusion is fortified by the probabilities of the case noted in the opinion of the trial judge supra. The original documents have been sent up with the record, and from the best comparison we can make the disputed signatures seem to be genuine.
Judgment affirmed.