(61 South. 847.)

No. 19,374.

SIEKMANN v. SCHWARTZ.

(April 14, 1913. Rehearing Denied May 12, 1913.)

(Syllabus by the Court.)

1. EVIDENCE (§ 265*)—ADMISSIONS—EFFECT—GENUINENESS OF NOTE.

While the acknowledgment of a defendant made prior to the institution of a suit that she was the maker of the note sued on is admissible as evidence to prove the genuineness of the note, still this acknowledgment should not be held to be determinative of the whole issue, as the court must consider the circumstances under which the acknowledgment was made, and the state of mental and physical health of the person making the acknowledgment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. § 265.*]

2. EXECUTION (§ 172*)—INJUNCTION—BURDEN OF PROOF—FORGERY.

When a defendant in executory process enjoins the seizure and sale on the ground that the note sued on is not genuine, the burden of

proving forgery is on the plaintiff in injunction.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 519–539; Dec. Dig. § 172.*]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Dr. Ivan Siekmann against Mrs. Widow Henrietta Schwartz. Defendant obtained an injunction on the ground that the note and mortgage sued on were forgeries, and plaintiff appeals. Reversed, and petition for injunction dismissed.

McCloskey & Benedict, of New Orleans, for appellant. Solomon Wolff, of New Orleans, for appellee.

BREAUX, C. J. This is the second appeal in the case. The parties are the same and the cause of action. See Siekmann v. Schwartz, 128 La. 10, 54 South. 405.

In the first action the case was remanded to enable the parties to litigate the question of forgery vel non not directly passed upon in the district court in the first suit. In deciding the issues on the first appeal above cited, it became necessary to determine whether or not an admission of the defendant when the note in controversy was presented to her was binding or not.

[1] The facts in regard to this acknowledgment of Mrs. Schwartz are that, when Dr. Siekmann offered to prove that she acknowledged her signature as genuine, counsel for Mrs. Schwartz objected to this evidence, and sought to have the evidence limited to that of witnesses who had seen the defendant sign the act, or declared that they knew it to be her genuine signature, because they had seen the author of the signature write and sign her signature, or by the proof of experts, or by comparison, but that the signature could not be proven by the acknowledgment of the person who had signed the paper, document, or note, and that, although she had admitted that it was her signature, it was not admissible evidence.

Learned counsel found ground for his objection in the case of Plicque & Lebeau v. Labranche, 9 La. 559.

The lower court permitted proof to be made of the acknowledgment. When the question came up on appeal in the first case, we expressed the view that the decision in the 9 La. 559 case was not sound, and expressly stated that the article of the Code as construed in that decision was contrary to the rules of evidence in regard to the proof of signatures which enabled one to prove signature by the acknowledgment of the party who signed. We held that it was not good law, and that evidence could not be restricted as contended by defendant. The decision was virtually overruled by us, and it is now expressly overruled.

But the court went further, and held that, despite the fact that the evidence was admissible as above stated, no importance was given to the alleged acknowledgment of the signature by Mrs. Schwartz, as it was evident that she could be easily imposed upon. The facts upon which that statement of the court were based were not stated, as it was deemed sufficient to insert the mere statement.

We will now state that which we did not state in the first decision, that defendant was 70 years of age at the time she was called upon to leave the bedside of her dying son, and come downstairs for a moment to meet Dr. Siekmann, who held the note and asked her if it was her note. She replied affirmatively. She added she had signed many notes, and her business had been entirely left with Maloney. At that moment, doubtless, much worried by the severe illness of her only·son, she acknowledged the signature, and might have acknowledged almost any signature. Acknowledgments made at such a moment cannot be considered as com-

pletely binding upon parties. Imitation of a signature under the circumstances might impose upon one much younger.

This view, however, is not by any means decisive of the issues. The view expressed by us at the time that it was not an entirely binding acknowledgment was suggested by the trend of the argument in the first case and the issues of the cause which tended to attach the greatest importance to the acknowledgment.

We will state further on this point that we did not convey the meaning that this asserted acknowledgment, made as just above mentioned, gave rise to the inference that the note was not a forgery only because the old lady had made an acknowledgment to which we did not give importance under the circumstances. We thought, then, as we do now, that the question of the genuineness of the signature must be determined without taking into account in any way the acknowledgment of Mrs. Schwartz. We sought further light and remanded the case.

We will now review the other evidence of the case without regard to the one acknowledgment made at the time before stated.

The onus of proof. Plaintiff, Siekmann instituted foreclosure proceedings upon the note and mortgage. Defendant obtained an injunction without bond upon the allegation that the note and mortgage were forgeries.

[2] Upon whom was the burden of proof is one of the questions for decision.

We are of the opinion that the burden was on plaintiff in injunction. Reason and authority leave very little room for discussion. The article of the Code of Practice, No. 325, on the subject, is plain. It was interpreted in Randazzo v. Ferrantelli, 130 La. 552, 58 South. 335, one of a number of similar cases. We have noted that Mrs. Schwartz in the pleadings denied the signature to the note and mortgage. The least that can be said is that the forgery is not proven.

This is a hard case. Mrs. Schwartz placed the utmost confidence in Maloney, and appointed him her agent while she was at some distance in another state. She, as a witness, did not remember whether she read the power of attorney which she gave him as she signed papers without inquiry. He had full charge of her business affairs, directed what improvements should be made upon her property, and saw to the payment of expenses therefor. There was no settlement made between them, and he furnished her with no statements. She had considerable property which yielded, as we understand, a handsome revenue, and she also had stocks and bonds which she sold on the advice of her agent, and the price remained in his hands.

After having considered all of the evidence, it is not difficult to conclude that she may have signed the note and mortgage without giving much thought to what she was doing.

To be near the bedside of her son, who was, as before mentioned, very ill, she went to Covington, La. On the 23d day of June, 1908, Maloney went to Covington. The mortgage and note bear that date. She signed papers on the suggestion of her agent under the guise, in so far as he was concerned, that it was to her interest. She evidently did not have her business affairs in hand.

She at first admitted that she was indebted to her agent, and afterward mildly demurred from the statement. Questioned about the presence of Maloney in Covington, she remembered she said about his coming, to use her own words, "to see my poor boy who was sick, who lived only a short time after that date."

Her servant testified that while the unfaithful agent was there in June Mrs. Schwartz said to her that Robert had made her sign, and she did not know what it was.

Again quoting her own words as a witness, "that he had her sign and sign, and she did not know what she was signing."

We infer that she was at times in doubt about her own signature and handwriting. It is not strange that an old lady past 70 years, imposed upon as she had been, hesitated about her own signature, and was not certain at times whether or not she had signed an address upon a letter or another note than the one here to which her attention was called. While testifying about a letter she had written, not directly pertinent, she owned, to wit: "I will tell you that I was nearly crazy."

In regard to another note, she said: ."I cannot say whether I signed this note or not." It is true that some time afterward she virtually acknowledged her signature.

The notary public by whom the act was drawn, as we understand, whose name appears on the act as notary, believed that it was her signature, although owing to the loose practice prevailing at the time (it is to be hoped it is now at an end) he did not see her sign. As we understand, he signed after the act was handed to him with her signature or with what purported to be her signature.

The other two witnesses testified in her behalf—one the cashier of a bank and the other the teller of the bank. They said that they did not profess to be experts; they admitted that errors were sometimes committed by experienced bank officers, and that notes and signatures presented at the counter were sometimes rejected, although genuine. Experienced men are imposed upon in regard to signatures in passing upon commercial paper. It is at times difficult to detect the error, and for that reason, doubtless, the inclination is to reject.

As made to appear by the testimony, there is a significant word used when the examining officer becomes suspicious. The paper is pronounced "informal," and not paid because it is "informal." The experience necessary in order that a banker may use that word is not great.

The testimony of the paying teller, the other witness, was substantially the same.

The testimony of these witnesses is not sufficient to overthrow all the other testimony that we have carefully read. Tellers of banks and cashiers ordinarily, as we understand, with the use of the polite word before quoted, are not slow in setting aside papers of their customers and others who present themselves to collect amounts they claim. One of these witnesses, the cashier, would have returned the note sued upon as informal, he said. The mere impression on his part that there was something slightly unusual would have been sufficient.

But it happens that the conduct of a prudent officer is not always a safe criterion by which to be governed when a note is produced in court.

Now as to the signatures themselves to the mortgage and note: With the use of such magnifying glasses as we had, we compared these signatures with the handwriting and signatures acknowledged by plaintiff in injunction as genuine. We found no great difference in comparing them. To our unpracticed eye one has as much the appearance of genuineness as the other. The characteristics of the handwriting were substantially the same so far as we could discover. All signatures and all handwritings are not always similar, particularly of aged persons, who are nervous, sometimes irritated, and signatures vary.

We have gone over the grounds as carefully as we could. We have considered the case from every angle, and have found it impossible to arrive at any other conclusion than that before expressed. As unfortunate as it is, and sad to see the plight in matter of money in which plaintiff has been placed,

there is only one alternative left us. According to all of the rules of evidence, and all that which should govern in approaching a question with the desire of ascertaining the truth, we are constrained to reverse the judgment.

It is therefore ordered, adjudged, and decreed for reasons stated that the judgment appealed from be avoided, annulled, and reversed. The demand of plaintiff in injunction is denied, and her petition dismissed at her costs in both courts.

His honor, SOMMERVILLE, J., takes no part.