Aetna Finance Company, a corporation engaged in the business of making small loans under the provisions of Act No. 7 of the Extra Session of 1928, brought this suit in the First City Court of New Orleans alleging that on March 22d 1947, it had made a loan of $300.00 on a note executed by Gus Betz and John W. Bowen, and that there remained past due and owing a balance of $275.48, together with interest and attorney's fees as stipulated in the note. It prayed for judgment against the said Betz and the said Bowen for the said amount with interest and attorney's fees.
Betz made no appearance and there was judgment by default against him as prayed for. He has not appealed.
Bowen answered the petition, denying that he had signed "any promissory note of any kind, in connection with Gus Betz and the Aetna Finance Company," and he also alleged that if his name appeared on any such note "the said alleged signature is a forgery." He then assumed the position of plaintiff in reconvention and made the following allegation:
"That defendant in reconvention, the Aetna Finance Company, called upon him for the payment of this note, prior to the suit being filed; that he denies that he had signed the note and informed them that his said alleged signature was a forgery, and he cautioned the said finance company not *Page 910 
to file suit against him, for the said suit would injure his good name and reputation; that in spite of the caution and the warning given to the finance company by reconvenor, the said finance company filed suit nevertheless, causing your petitioner worry, embarrassment and mental anguish, and causing him to bind himself for the payment of $150.00 attorney's fees for the defense of this case."
He prayed for a dismissal of the main demand and for judgment in reconvention for $650.00 against Aetna Finance Company.
Aetna Finance Company, defendant in reconvention, filed an exception of no cause of action, which was "referred to the merits."
After a trial there was judgment below in favor of Bowen dismissing the suit as against him, and on the reconventional demand there was judgment in Bowen's favor against Aetna Finance Company in the sum of $150.00, with interest and costs.
Counsel for Bowen assert in their argument in this court that plaintiff failed to prove the genuineness of the signature of Bowen and they rely largely upon the fact that plaintiff did not attempt to prove this signature in one of the ways set forth in Articles 324 and 325 of our Code of Practice. Those articles read as follows:
"324. Acknowledgment or denial of signature by defendant. — When the demand is founded on an allegation, or an act under private signature, which is alleged to have been signed by the defendant, such defendant shall be bound in his answer to acknowledge expressly or to deny his signature.
"325. Denial of signature by defendant — Proof of genuineness. — If the defendant deny his signature in his answer, or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name.
"But the proof by witness shall not exclude the proof by experts or by a comparison of the writing, as established by the Civil Code."
It is true that when the signature of Bowen was denied by him and the case came to trial, plaintiff offered no handwriting expert, and did not produce any witness who had seen the defendant sign the note sued on, nor any witness who, having frequently seen him sign his name, could identify his signature.
But plaintiff did produce a witness, Edward Wood, its office manager, who testified that when Betz brought the note to him, before the loan had been completed, and he saw on it a signature which Betz reported was that of defendant Bowen, he, Wood, telephoned to a number which had been given on a previous application as that of Bowen, in an effort to "verify" the loan. Wood said that he spoke to someone whose voice souned to him like "John's" voice — John being the first name of John W. Bowen — whom Betz knew. Before Wood could state what he had been told by "John", counsel for defendant Bowen made the following objection:
"I object to any conversation this gentleman had with some unknown party over the telephone."
This objection was maintained and Wood was not permitted to state what he had been told over the telephone by someone whose voice sounded to him like that of Bowen.
It is contended by counsel for Bowen that the purpose of the evidence which was excluded was to show that Bowen had stated over the telephone that though he did not sign the note, he would see that it was paid or would be responsible for it, and it was contended that such evidence would have been inadmissible as not responsive to the pleadings, the argument being that Bowen was sued as the maker of the note and not as a guarantor who, though he had not executed the note, had said that he would see that it was paid.
[1] It is argued that such evidence, if admitted, would have enlarged the pleadings. However, there is nothing in the record to show that the purpose of eliciting evidence as to the statement which had been made over the telephone was to show *Page 911 
that Bowen had agreed that he would pay the note. It may well be that Wood would have testified that Bowen admitted over the telephone that he had signed the note. If that had occurred, surely evidence to the effect that such admission had been made over the telephone would have been admissible. And it is almost inconceivable that the testimony concerning the conversation of Wood with Bowen would have been for the purpose of proving that Bowen had stated that though he had not signed the note he would be responsible for it, because it is certain that since at that time the loan had not been completed, if Bowen had made the statement over the telephone that he had not signed the note, the loan would not have been consummated on that note on the mere verbal assurance of Bowen that he would be responsible for it.
The fact that the telephone was used did not affect the admissibility of the statement.
Mr. Wigmore, in his work on Evidence, Second Edition, Vol. 4, p. 585, in discussing the admissibility of evidence concerning telephone conversations, states:
"It is generally conceded that a person may be recognized and identified by his voice, if the hearer is acquainted with the speaker's voice. * * *"
Our own Supreme Court, in a criminal case in which the defendant was convicted and sentenced to fifteen years imprisonment, held that evidence as to statements heard over the dictaphone and automatically recorded could be admitted if the voice of the speaker could be identified. See State v. Dooley, 208 La. 203, 23 So.2d 46, 48, wherein the court said:
"As we understand, a microphone, like a telephone, is an electrical contrivance by means of which sound is heard at a greater distance than it may ordinarily be heard. The rule as to allowing the introduction of testimony of conversations of defendants in criminal prosecutions heard by this kind of mechanical contrivance is as follows: 'The admissions and declarations of accused are not incompetent because they were received over a telephone, dictograph or detectaphone, where the witness receiving them could testify that he knew and recognized his voice, or where his testimony as to the identity of the voice is sufficient to carry the question to the jury * * *.' 22 C.J.S., Criminal Law, § 731, page 1249."
The evidence which was sought to be elicited may not have been inadmissible, provided Wood could identify the voice of the speaker and it is clear that he thought he could do so because he referred to the speaker as "John", and stated that he had obtained his number from an application for a loan which had been previously signed by this same John, — meaning John Bowen.
It may well be that even if such evidence had been introduced, the trial judge would not have been convinced by it and would have decided that the signature was a forgery, but the evidence then would have been in the record and could have been considered by us.
As the record on the main issue is now made up, we think that the ends of justice will best be served by remanding the matter to the end that such evidence and any other admissible evidence may be introduced.
[2] We have no doubt at all that, in spite of Articles 324 and 325 of our Code of Practice, admissions made by the alleged maker of the note concerning the genuineness of the signature may be introduced in evidence. In the case of Siekmann v. Schwartz, 132 La. 852, 61 So. 847, as expressed in syllabus No. 1, it is said:
"While the acknowledgment of a defendant made prior to the institution of a suit that she was the maker of the note sued on is admissible as evidence to prove the genuineness of the note, still this acknowledgment should not be held to be determinative of the whole issue, as the court must consider the circumstances under which the acknowledgment was made, and of mental and physical health of the person making the acknowledgment."
[3] When we come to consider the reconventional demand, we reach the conclusion that that demand should have been dismissed under the exception of no cause of action and that no evidence in support *Page 912 
of it should have been accepted. There is in the allegation which we have quoted no charge whatever of malice and no charge of want of probable cause. It is true, of course, that there is no express language which must be resorted to where either malice or want of probable cause is charged, but there must certainly be something more than a simple allegation that the plaintiff in the suit was told that the debt sued on was not due. If a suit for damages will lie whenever a prospective defendant in a civil action alleges that he told the plaintiff that the debt was not due and gave warning not to sue, then in almost every case an unsuccessful plaintiff will be subjected to liability for damages and for attorney's fees.
In Corpus Juris Secundum, Vol. 1, Actions, § 15, page 1008, it is stated:
"In consonance with the rule or maxim already noted in § 4a of this Title, that for every wrong there is a remedy, it is the policy of the law that every person, acting in good faith, should have free and unobstructed access to the courts for the purpose of invoking their aid to protect him in the enjoyment of his legal rights and property, and, for this purpose, of both maintaining actions and making defenses thereto. Although one party may thereby subject the other to unnecessary trouble and expense, unless the action is malicious and without probable cause, as fully discussed in the title Malicious Prosecution § 19 (38 C.J. p. 400 note 36-p 403 note 45), the damage so caused is damnum absque injuria, and, as a general rule, a cause of action cannot be maintained for redress therefor, except in so far as it may be covered by a contract of indemnity, or the successful party may be entitled to redress by way of taxable costs, * * *."
To the same effect we note what the Supreme Court of Louisiana said in Cade v. Yocum, 8 La. Ann. 477:
"A plaintiff who neither arrests the defendant, nor disturbs her property, will not be mulcted in damages, because it turns out he was mistaken as to what he supposed were his legal rights."
If it be true that the defendant in reconvention, in addition to filing the exception of no cause of action, should have objected to the introduction of any evidence in support of the reconventional demand, then we say that, nevertheless, the reconventional demand must be dismissed because the evidence, which was introduced, does not to any extent at all show malice or want of probable cause.
[4, 5] We have been somewhat concerned over the question of whether we should remand the main demand for the introduction of the evidence which was excluded and such other relevant evidence as may be available and yet dismiss the reconventional demand. We have reached the conclusion that there is no doubt of our right to do this. An appellate court is vested with discretion to remand a case wherever the ends of justice will be best served, and surely we are not required to remand the entire matter where the record shows to our complete satisfaction that the reconventional demand is not well founded.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment dismissing the reconventional demand, and that there be further judgment remanding the principal suit to the First City Court of New Orleans for further proceedings according to law and not inconsistent with the views herein expressed, costs of this appeal to be borne by defendant, John W. Bowen, all other costs to await the final determination of the suit.
Reversed and remanded.
 *Page 44